IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action No. 1:22-cv-10604 |
| ) | |
| SCHNITZER STEEL INDUSTRIES, INC.,  ) | |
| ) | |
| Defendant.  ) | |

**<u>CONSENT DECREE</u>**

# <u>TABLE OF CONTENTS</u>

I.      JURISDICTION AND VENUE ...................................................................................... 3
II.     APPLICABILITY ............................................................................................................. 4
III.    DEFINITIONS .................................................................................................................. 5
IV.     CIVIL PENALTY ............................................................................................................ 6
V.      COMPLIANCE REQUIREMENTS ............................................................................... 7
VI.     ENVIRONMENTAL MITIGATION PROJECT ........................................................ 11
VII.    REPORTING REQUIREMENTS ................................................................................ 14
VIII.   RECORDKEEPING REQUIREMENTS ..................................................................... 15
IX.     APPROVAL OF DELIVERABLES .............................................................................. 16
X.      STIPULATED PENALTIES ......................................................................................... 17
XI.     FORCE MAJEURE ........................................................................................................ 21
XII.    DISPUTE RESOLUTION ............................................................................................. 23
XIII.   INFORMATION COLLECTION AND RETENTION .............................................. 25
XIV.    EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS ................................ 27
XV.     COSTS ............................................................................................................................. 28
XVI.    NOTICES ........................................................................................................................ 29
XVII.   EFFECTIVE DATE ....................................................................................................... 30
XVIII.  RETENTION OF JURISDICTION .............................................................................. 30
XIX.    MODIFICATION ........................................................................................................... 30
XX.     TERMINATION ............................................................................................................. 31
XXI.    PUBLIC PARTICIPATION ......................................................................................... 32
XXII.   SIGNATORIES/SERVICE ........................................................................................... 32
XXIII.  INTEGRATION ............................................................................................................. 32
XXIV.   FINAL JUDGMENT ...................................................................................................... 33
XXV.    <u>26 U.S.C. SECTION 162(F)(2)(A)(II)</u> IDENTIFICATION .......................................... 33
XXVI.   APPENDIX ...................................................................................................................... 33

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant Schnitzer Steel Industries, Inc. ("Defendant" or "Schnitzer") violated provisions of the Clean Air Act ("Act"), 42 U.S.C. §§ 7401-7671q, and the regulations promulgated thereunder at 40 CFR, Part 82.  Schnitzer currently owns and operates the 40 scrap metal recycling facilities in the United States, including Puerto Rico, that are the subject of the Complaint and identified in Appendix A of this Consent Decree (the "Facilities").

The Complaint alleges that Schnitzer violated Title VI of the Act, 42 U.S.C. §§ 7671-7671q, and 40 CFR §§ 82.154, 82.155, at each of the Facilities by (1) accepting appliances for recycling that still contained refrigerant without recovering the refrigerant prior to disposing of the item and/or allowing the release of the refrigerant into the environment; (2) accepting appliances for recycling, which no longer contained refrigerant, that were not accompanied by (a) a signed statement, including the name and address of the person who recovered the refrigerant and the date the refrigerant was recovered, or (b) a contract between the supplier and the final processor stating either that the supplier will recover any remaining refrigerant from the appliance or shipment of appliances prior to delivery or verify that the refrigerant had been properly recovered prior to receipt by the supplier; and/or (3) accepting appliances for recycling, which no longer contained refrigerant, from suppliers covered by statements or contracts stating the refrigerant was removed properly from the appliance, even though Schnitzer, or its employee or agent receiving the statement or contract, knew or had reason to know that the signed statement or contract was false.

Schnitzer does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

Plaintiff acknowledges Schnitzer's cooperation and proactive efforts in resolving the United States' claims.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes only of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Title VI of the Act, 42 U.S.C. §§ 7671-7671q, and 40 CFR §§ 82.154, 82.155.

3

## II.     APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of any Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented, unless:  (1) the transferee agrees to undertake all of the outstanding obligations required by this Decree with respect to the transferred Facility or Facilities and to be substituted for the Defendant as a Party under the Decree and thus be bound by the terms thereof as it relates to the transferred Facility or Facilities, except for the payment obligations under Section IV (Civil Penalty) and under any provisions of Section X (Stipulated Penalties) applicable to the Defendant for its violations of this Decree, which shall remain the obligation of the Defendant; and (2) the United States consents to relieve Defendant of such outstanding non-penalty obligations.  The United States' decision to refuse to approve the substitution of the transferee for the Defendant shall not be subject to judicial review.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

4

## III.    DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" shall mean the complaint filed by the United States in this action;

b.      "Consent Decree" or "Decree" shall mean this Decree and any appendices attached hereto;

c.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.      "Defendant" or "Schnitzer" shall mean Schnitzer Steel Industries, Inc.;

e.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f.      "Effective Date" shall have the definition provided in Section XVII;

g.      "Facility" shall mean one of the 40 scrap metal recycling facilities owned and operated by Schnitzer in the United States that are the subject of the Complaint and that are identified in Appendix A hereto.  "Facilities" shall mean all of these 40 facilities.

h.      "Month," when computing any period of time under this Consent Decree, means the period between and including a date in the starting month (*e.g.*, January 12) and the day before that date in the next calendar month (*e.g.*, February 11), except that if the starting date

is the first day of a calendar month, the last day in the period shall be the last day of that same

month;

> i. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

> j. "Parties" shall mean the United States and Defendant;

> k. "Regulated Scrap" shall mean 'small appliances,' 'motor vehicle air conditioners (MVAC),' and/or 'MVAC-like appliances,' as those terms are defined in Subpart F of 40 C.F.R. Part 82.

> l. "Section" shall mean a portion of this Decree identified by a roman numeral;

> m. "United States" shall mean the United States of America, acting on behalf of EPA; and

> n. "Year," when computing any period of time under this Consent Decree, means the period between and including a date in the starting month (*e.g.*, January 2, 2020) and the day before that date in the next calendar year (*e.g.*, January 1, 2021).

## IV.    CIVIL PENALTY

8.    Within 30 Days after the Effective Date, Defendant shall pay the sum of

$1,550,000 as a civil penalty, together with interest accruing from the date on which this Consent

Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of

lodging.

9.    Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer

("EFT") to the U.S. Department of Justice account, in accordance with written instructions to be

provided to Defendant by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for

the District of Massachusetts, Moakley U.S. Federal Courthouse, 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210, phone (617) 748-3696, after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to the individual identified under Paragraphs 73 and 74 to receive notice on behalf of Defendant in accordance with Section XVI (Notices).  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XVI (Notices).

10.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail to EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States via email or regular mail in accordance with Section XVI (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Schnitzer Steel Industries, Inc.*, and shall reference the civil action number, CDCS number, and DOJ case number 90-5-2-1-12074.

11.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section X (Stipulated Penalties) in calculating its federal income tax.

## V.    COMPLIANCE REQUIREMENTS

12.     Defendant shall at all times comply with Title VI of the Act, 42 U.S.C. §§ 7671-7671q, and the regulations promulgated thereunder, including 40 CFR §§ 82.154 and 82.155.

13.     Defendant must develop and implement at all Facilities a refrigerant recovery management program ("RRMP").  The RRMP must include the following:

7

a.    <u>Refrigerant Recovery Capability.</u>  At all Facilities where Regulated Scrap that potentially or actually contains refrigerant may be accepted, Defendant must implement one or more designated methods for properly recovering refrigerant contained in such scrap.  Such designated refrigerant recovery methods may include onsite recovery by Defendant or a third-party contractor, or offsite recovery by a third-party contractor.  Regulated Scrap that is accepted at a Facility must be managed in accordance with the designated method(s) for properly recovering refrigerant contained in such scrap.  All designated refrigerant recovery methods must comply with all applicable laws and regulations governing refrigerant management and recovery, including the provisions for the safe disposal of appliances under <u>40 C.F.R § 82.155</u>.

b.    <u>Screening of Regulated Scrap.</u>  All Regulated Scrap must be inspected upon arrival at each Facility by one or more employee(s) of Defendant who has/have received training as prescribed in Paragraph 13(e).  Such employee(s) must ensure that, prior to acceptance at each Facility, Regulated Scrap not containing any refrigerant is accompanied by the documentation required under Paragraph 13(c).  Defendant may either (a) accept any Regulated Scrap not accompanied by the documentation required under Paragraph 13(c) as containing or potentially containing refrigerant, in which case Defendant must clearly mark it as such at the time of acceptance and manage it in accordance with Paragraph 13(a), or (b) reject it and document such rejection in a log to be maintained by Defendant.  Defendant must document any Regulated Scrap delivered to Defendant that exhibits signs of prior unlawful venting of refrigerants.  Such documentation must include delivery date, description of scrap, indication of unlawful venting, and name and address of supplier.  Defendant must maintain the screening documentation referenced in this Paragraph 13.b at each Facility to which it applies.  Defendant must provide or allow review and copying of such documentation by EPA upon request.

8

      c.    <u>Certification for Acceptance of Regulated Scrap Not Containing</u> <u>Refrigerant.</u>  All Regulated Scrap accepted by Defendant that does not contain refrigerant must be accompanied by a signed statement or be covered by a contract from the supplier, as required by 40 C.F.R. § 82.155(b)(2), verifying that all refrigerant that had not leaked from the Regulated Scrap previously has been recovered pursuant to 40 C.F.R. § 82.155(a).  A signed statement must include the name and address of the person who recovered the refrigerant and the date it was recovered, and a signed contract must either state that the supplier will properly recover any remaining refrigerant from Regulated Scrap prior to delivery or verify that the refrigerant had been properly recovered prior to receipt of the Regulated Scrap by the supplier.

      d.    <u>Notice Regarding Regulated Scrap.</u>  At the time any signed statement required under Paragraph 13(c) is presented to Defendant at a Facility and at the time any contract required under Paragraph 13(c) is signed, Defendant must provide a written notification of the requirements pertaining to Regulated Scrap, as provided in 40 C.F.R. § 82.155(b)(2)(ii), to the supplier of such Regulated Scrap.

      e.    <u>Employee Training.</u>  Defendant shall develop and implement an employee training program, including a written guidance plan, maintained and implemented at all Facilities, designed to achieve the goals of the training program and instructing employees on how to effectively implement the program at every level of Defendant's corporate structure.  The training program shall include, at a minimum:

- Information about ozone depletion, the Montreal Protocol, how refrigerant recovery activities at the Facilities impact Earth's ozone layer, and human health and environmental impacts from depletion of the ozone layer.

- An overview of the Clean Air Act Protection of Stratospheric Ozone regulations and the requirements of 40 C.F.R. § 82.155.

- Copies of a model verification statement and contract and instructions on the appropriate use of such statements or contracts.

- Training on the screening and proper management of Regulated Scrap, including but not limited to:

    o identification of the various types of Regulated Scrap;

    o proper management of each type of Regulated Scrap, in accordance with regulatory requirements, including where refrigerant recovery is performed by Defendant's employees, proper use of refrigerant recovery equipment in order to recover refrigerant, in accordance with 40 C.F.R. § 82.155(a);

    o implementation of screening procedures, in accordance with Paragraph 13(b);

    o verification that all Regulated Scrap is accompanied by the verification statement or covered by a contract, as required under Paragraph 13(c) and 40 C.F.R. § 82.155(b)(2);

    o understanding the criteria for rejecting Regulated Scrap and the proper procedures for maintaining rejection logs; and

    o recognizing and reporting signs of unlawful venting of refrigerant from Regulated Scrap prior to delivery.

Visual learning tools, such as photographs, video, and multi-media presentations, should be used when practicable and appropriate.

      f.    <u>Corporate Roles and Responsibilities.</u>  The RRMP must identify the roles and responsibilities within Defendant's corporate structure for each aspect of the RRMP, including without limitation development, review and revision, recordkeeping and reporting, training, implementation on-site, refrigerant handling, and oversight of compliance.

      g.    <u>Training Schedule.</u>  The RRMP must specify a deadline by which newly hired, or previously untrained, employees shall complete the training required under Paragraph 13(e).  At a minimum, each new or previously untrained employee must complete such training before performing activities implementing the RRMP.

14.     Prior approval of initial RRMP.  By email dated December 10, 2021, EPA preapproved Defendant's initial RRMP.

15.     Revision of RRMP.  Defendant shall include all RRMP revisions in Defendant's semi-annual report required in Paragraph 23 below.  EPA may approve or disapprove any RRMP revision, in accordance with Section IX (Approval of Deliverables); provided, however, that EPA shall not mandate which refrigerant recovery method allowed under Paragraph 13(a) will be used at a specific Facility.

## VI.     ENVIRONMENTAL MITIGATION PROJECT

16.     Defendant shall implement the Environmental Mitigation Project ("Project") described in this Section in compliance with the approved plans and schedules for such Project and other terms of this Consent Decree.

17.     Defendant shall develop and implement a plan to segregate all R-12 refrigerant[1] recovered from scrap appliances and MVACs at its Facilities and to send such R-12 refrigerant to one or more facilities for complete destruction.  The destruction facility or facilities must have the capability to "completely destroy" R-12 refrigerant, as that term is defined in 40 C.F.R. § 82.3.[2]

18.     Within 120 days of the Effective Date, Defendant shall submit a plan for the implementation of the Project to EPA for review and approval.  The plan shall include:

---

[1] "R-12" refrigerant is dichlorodifluoromethane, also known as "CFC-12" or "Freon 12."

[2] 40 C.F.R. § 82.3 (entitled "Definitions for class I and class II controlled substances") defines "completely destroy" as "to cause the expiration of a controlled substance at a destruction efficiency of 98 percent or greater, using one of the destruction technologies approved by the Parties [to the Montreal Protocol]."

*Consent Decree*
*United States v. Schnitzer Steel Industries, Inc.*

       a.      A detailed description of the actions to be taken by Defendant to implement the Project and a timeline for implementation of such actions;

       b.      Documentation establishing that Defendant has designated a responsible official or officials within Defendant's company who will ensure implementation and completion of the Project;

       c.      Documentation establishing that Defendant has contracted with the operator of one or more destruction facilities, within the meaning of Paragraph 17 of this Section, to completely destroy the R-12 refrigerant and has contracted with a qualified transporter to transport the R-12 refrigerant to the destruction facility or facilities;

       d.      Documentation that the selected destruction facility or facilities has the capability to completely destroy R-12 refrigerant; and

       e.      A list of records to be kept to document the implementation and completion of the Project.  These records must include, but are not limited to, the documentation specified in Paragraph 22 of this Section.

19.      With respect to the Project, Defendant certifies the truth and accuracy of each of the following:

       a.      That, as of the date of executing this Decree, Defendant is not required to perform or develop the Project by any federal, state, or local law or regulation and is not required to perform or develop the Project by agreement, grant, or as injunctive relief awarded in any other action in any forum;

       b.      That, as of the date of executing this Decree, the Project is not a project that Defendant was planning or intending to perform or implement other than in settlement of the claims resolved in this Decree;

*Consent Decree*
*United States v. Schnitzer Steel Industries, Inc.*

c.    That Defendant has not received and will not receive credit for the Project in any other enforcement action; and

d.    That Defendant shall neither generate nor use any pollutant reductions from the Project as pollutant offsets, or to apply for, obtain, trade, sell, or receive compensation for any pollutant reduction credits.

20.    In connection with any communication to the public or to shareholders regarding Defendant's actions or expenditures relating in any way to the Environmental Mitigation Project prescribed under the terms of the Consent Decree, until the completion of the Project, Defendant shall include prominently in the communication the information that the actions and expenditures were required by this Consent Decree.

21.    Beginning with the first semi-annual report required under Paragraph 23 of this Consent Decree, and continuing until completion of the Project, Defendant shall provide EPA with documents in its semi-annual reports to substantiate progress on the implementation and/or completion of the Project described in this Section.

22.    For the period of five years following the Effective Date of this Consent Decree, Defendant shall cause the complete destruction of all R-12 refrigerant recovered from scrap appliances and MVACs at its Facilities.  Within 60 Days after Defendant completes the Project in accordance with Section VI, Defendant shall submit to EPA a written notification that the Project has been completed, including receipts, invoices, and other documentation demonstrating the complete destruction of such R-12, including dates of destruction and, for each date of destruction, the quantity destroyed, method of destruction, name and address of the destruction facility, name and address of the transporter of such refrigerant from a Schnitzer Facility to the destruction facility, and name and address of the operator of the destruction facility, as well as a

13

statement identifying the total emission reductions or other environmental benefits achieved through implementation of the Project.

## VII.    REPORTING REQUIREMENTS

23.     Every six Months, beginning on the last day of the sixth Month following the Effective Date of this Consent Decree until termination of the Decree, Defendant shall submit to EPA a written compliance report consisting of the following:

      a.     documentation of the type(s) and amount(s) of refrigerant recovered from scrap appliances and MVACs accepted by Defendant's Facilities (such as receipts for recovered refrigerant sent to a reclaimer);

      b.     the first 25 verification statements and contracts received at each Facility during each reporting period, as required under Paragraph 13(c);

      c.     the number of employees trained under Paragraph 13(e) during the previous reporting period;

      d.     discussion of any deviations or challenges in implementing the refrigerant management program; and

      e.     documentation required under Paragraph 22 substantiating progress on the implementation and/or completion of the Project described in Section VI.

The reporting requirements in Paragraph 23(a)-(d) shall terminate five years after the Effective Date, but the reporting requirement in Paragraph 23(e) shall continue in effect through the date of the Project's completion.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XI (Force Majeure).

24.     All notices and reports required under this Section shall be submitted to the persons designated in Section XVI (Notices).

25.     Each report submitted by Defendant under this Section shall be signed by an official of Defendant and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

26.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

27.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   RECORDKEEPING REQUIREMENTS

28.     Defendant shall maintain records sufficient to demonstrate that Defendant is complying with the terms and conditions of this Consent Decree and the RRMP, including documentation relating to Defendant's receipt and acceptance of Regulated Scrap, and Defendant's management of Regulated Scrap that contains refrigerant. Such records shall be maintained as provided in Section XIII (Information Collection and Retention).

## IX.    APPROVAL OF DELIVERABLES

29.    After review of any plan, report, or other deliverable required to be submitted to EPA for approval pursuant to this Consent Decree, EPA will in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission and disapprove the remainder; or (iv) disapprove the submission.

30.    If the submission is approved pursuant to Paragraph 29(i), Defendant shall, within 30 days after EPA approval, take any actions required by the approved plan, report, or other deliverable, in accordance with any applicable schedules and requirements.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 29(ii) or (iii), Defendant shall, upon written direction from EPA, take all actions required as a result of such conditional or partial approval, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XII (Dispute Resolution).

31.    If the submission is disapproved in whole or in part pursuant to Paragraph 29(iii) or (iv), Defendant shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other deliverable, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

32.    If a resubmitted plan, report, or other deliverable, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

33.     If Defendant elects to invoke Dispute Resolution under the provisions of this Section, Defendant shall do so by sending a Notice of Dispute in accordance with Paragraph 54 (Informal Dispute Resolution) within 20 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

34.     Any stipulated penalties applicable to the original submission, as provided in Section X (Stipulated Penalties), accrue during the 30-Day period provided under Paragraph 31 or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## X.    STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within any specified time schedules established by or approved under this Decree.

36.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $750 per Day for each Day that the payment is late.

37.     Clean Air Act Compliance Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraph 13.a through 13.g of Section V (Clean Air Act Compliance Requirements), including

17

*Consent Decree*
*United States v. Schnitzer Steel Industries, Inc.*

the development and implementation of the initial RRMP referenced in Paragraph 14 and any

revision thereof under Paragraph 15 and Section IX (Approval of Deliverables):

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through 14th Day |
| $1,125 | 15th through 30th Day |
| $1,500 | 31st day and beyond |

38.     Environmental Mitigation Project.  The following stipulated penalties shall accrue

per violation per Day for each Day that Defendant has failed to implement the Project described

in Section VI (Environmental Mitigation Project) in accordance with the provisions of that

Section:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through 14th Day |
| $1,125 | 15th through 30th Day |
| $1,500 | 31st day and beyond |

39.     Reporting and Recordkeeping Requirements.  The following stipulated penalties

shall accrue per violation per Day for each violation of the reporting and recordkeeping

requirements identified in Paragraph 13 of Section V (Compliance Requirements), Section VII

(Reporting Requirements), and Section VIII (Recordkeeping Requirements):

18

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $750 | 15th through 30th day |
| $1,125 | 31st day and beyond |

40.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

41.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

42.      The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

43.     Stipulated penalties shall continue to accrue as provided in Paragraph 40 during any Dispute Resolution, but need not be paid until the following:

        a.     If the dispute is resolved by agreement or by a decision of the United States and EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of the United States' and EPA's decision or order.

        b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owed, together with interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

19

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owed, together with interest, within 15 Days of receiving the final appellate court decision.

44.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 9 and 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

45.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

46.    The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

47.    Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  Where a violation of this Consent Decree is also a violation of the Act, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

20

## XI.    FORCE MAJEURE

48.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as the event is occurring and (b) following the occurrence of the event, such that the delay and any adverse effects of the delay are minimized.  "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

49.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when Defendant first knew that the event might cause a delay.  Within ten days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for

21

that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

50.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, in and of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

51.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

52.    If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 20 days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 48 and 49. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.    DISPUTE RESOLUTION

53.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution under this Section of a dispute concerning a particular issue shall preclude Defendant from raising that issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

54.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute in accordance with the provisions of Section XVI (Notices).  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

55.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

56.    The United States shall serve its Statement of Position within 45 Days after receipt of Defendant's Statement of Position.  The United States' Statement of Position shall

23

include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

57.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

58.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

59.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 55 that is accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 55, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree.

60.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 43.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.   INFORMATION COLLECTION AND RETENTION

61.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

62.     Until three years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all

documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree, including records described in Paragraph 28. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

63.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, Defendant shall not withhold, on grounds of privilege, any documents, records, or other information created or generated pursuant to the requirements of this Consent Decree.

64.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to

any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

65.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV.   EFFECT OF SETTLEMENT / RESERVATION OF RIGHTS

66.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

67.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 66.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly stated in Paragraph 66.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, any one of Defendant's Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

68.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to a Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim

preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 66.

69.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of Title VI of the Act, 42 U.S.C. §§ 7671-7671q, and 40 CFR §§ 82.154, 82.155, or with any other provisions of federal, State, or local laws, regulations, or permits.

70.    This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

71.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.    COSTS

72.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendant.

## XVI.   NOTICES

73.      Unless otherwise specified in this Decree, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

As to the United States by email:

eescdcopy.enrd@usdoj.gov
Re: DOJ No. 90-5-2-1-12074

As to the United States by mail:

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-12074

As to EPA by e-mail:

Air Enforcement and Compliance Assurance Branch
U.S. EPA, Region 5
r5airenforcement@epa.gov

Natalie Topinka
Environmental Scientist
Enforcement and Compliance Assurance Division
U.S. EPA, Region 5
topinka.natalie@epa.gov

As to Defendant:

General Counsel
Schnitzer Steel Industries, Inc.
299 SW Clay Street; Suite 350
Portland, OR  97201
generalcounsel@schn.com

74.     Any Party may change its designated notice recipient or notice address provided above by written notice to the other Parties.

75.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

76.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVIII.  RETENTION OF JURISDICTION

77.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  MODIFICATION

78.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

79.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 59, the Party seeking the modification bears the burden of demonstrating

that it is entitled to the requested modification in accordance with Federal Rule of Civil

Procedure 60(b).

## XX.    TERMINATION

80.    After satisfactory compliance with this Consent Decree has been maintained for a

period of five years from the Effective Date, including those requirements relating to the

Environmental Mitigation Project required by Section VI, and provided that Defendant has paid

the civil penalty and that any accrued stipulated penalties have been paid as required by this

Consent Decree, Defendant and any parties-defendant that have been added by material

modification of this Consent Decree pursuant to Paragraph 4.b ("Requestors") may jointly serve

upon the United States a Request for Termination, stating that the Requestors have satisfied

those requirements, together with all necessary supporting documentation.

81.    Following receipt by the United States of a Request for Termination pursuant to

the preceding Paragraph, the Requestors and the United States shall confer informally

concerning the Request and any disagreement that the Requestors and the United States may

have as to whether there has been satisfactory compliance with the requirements for termination

of this Consent Decree.  If the United States agrees that the Decree may be terminated, the

Requestors and the United States shall submit, for the Court's approval, a joint stipulation

terminating the Decree.

82.    If the United States does not agree that the Decree may be terminated, the

Requestors may invoke Formal Dispute Resolution under Paragraphs 55 through 58 of Section

XII, but may not seek Dispute Resolution of any dispute regarding termination until 90 Days

after service of the Request for Termination.

## XXI.  PUBLIC PARTICIPATION

83.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXII.  SIGNATORIES / SERVICE

84.    Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

85.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII.  INTEGRATION

86.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the

32

settlement embodied herein. Other than reports and notifications that are subsequently submitted pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor may it be used in construing the terms of this Consent Decree.

## XXIV.  FINAL JUDGMENT

87.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Schnitzer. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXV.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

88.    For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraph 5; Section V (Compliance Requirements), Paragraphs 12-15; Section VI (Environmental Mitigation Project), Paragraphs 16-22; Section VII (Reporting Requirements), Paragraphs 23 and 27; Section IX (Approval of Deliverables), Paragraph 30; and Section XIII (Information Collection and Retention), Paragraphs 61-64, is restitution or required to come into compliance with the law.

## XXVI.  APPENDIX

89.    The following Appendix is attached to and part of this Consent Decree:

"Appendix A" is the list of Facilities covered by this Consent Decree.

Dated and entered this __23__ day of __June__, 2022.

_____/s/ Leo T. Sorokin_____
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


_4/18/2022_____          _David Weigert_____
Date                       DAVID LAUFMAN WEIGERT
                           Senior Counsel
                           STEVEN A. KELLER
                           Trial Attorney
                           Environmental Enforcement Section
                           Environment and Natural Resources Division
                           U.S. Department of Justice
                           P.O. Box 7611
                           Washington, DC  20044-7611
                           (202) 514-0133 (DLW)
                           (202) 514-5465 (SAK)

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

ROBERT KAPLAN    Digitally signed by ROBERT KAPLAN
Date: 2021.12.30 10:09:15 -06'00'

_____
Date

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency, Region 5

DEBORAH CARLSON    Digitally signed by DEBORAH CARLSON
Date: 2021.12.21 10:27:57 -06'00'

_____
Date

DEBORAH A. CARLSON
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5

FOR SCHNITZER STEEL INDUSTRIES, INC.:

12/16/21
—————————
Date

Signature: _Peter B. Saba_

Name: ___Peter B. Saba___

Title: ___Senior Vice President___

Company: ___Schnitzer Steel Industries, Inc.___

Address: ___299 SW Clay St., Suite 350___

___Portland, OR  97201___

_____

Appendix A:  Schnitzer Facilities Covered by Consent Decree

| Name | Street Address | City | State |
|---|---|---|---|
| Attalla | 1007 9th Street SW | Attalla | AL |
| Birmingham | 515 1st Avenue North | Birmingham | AL |
| Dothan | 2101 Columbia Highway | Dothan | AL |
| Fresno | 2727 S Chestnut Avenue | Fresno | CA |
| Oakland | 1101 Embarcadero West | Oakland | CA |
| Sacramento | 12000 Folsom Blvd. | Rancho Cordova | CA |
| San Jose | 11665 Berryessa Road | San Jose | CA |
| Albany | 1301 East Gordon Avenue | Albany | GA |
| Atlanta - Adamson St. | 897 Adamson Street SW | Atlanta | GA |
| Atlanta - Blashfield St. | 1450 Blashfield Street SE | Atlanta | GA |
| Cartersville | 301 Industrial Park Road NE | Cartersville | GA |
| Columbus | 420 10th Avenue | Columbus | GA |
| Gainesville | 1535 Fulenwider Road | Gainesville | GA |
| Macon - 7th St. | 1645 7th Street | Macon | GA |
| Macon - Lower Poplar Rd. | 950 Lower Poplar Road | Macon | GA |
| Kapolei (Oahu) | 91-056 Hanua Street | Kapolei | HI |
| Puunene (Maui) | 2000 Mokulele Highway | Puunene | HI |
| Auburn | 522 Washington Street North | Auburn | ME |
| Portland | 568 Riverside Street | Portland | ME |
| Attleboro | 136 Bacon Street | Attleboro | MA |
| Everett | 69 Rover Street | Everett | MA |
| Worcester | 20 Nippnapp Trail | Worcester | MA |
| Billings | 1100 6th Avenue North | Billings | MT |
| Reno | 490 Valley Road | Reno | NV |

37

| Concord - Sandquist St. | 25 Sandquist Street | Concord | NH |
|---|---|---|---|
| Manchester - Allard Dr. | 200 Allard Drive | Manchester | NH |
| Bend | 110 SE 5th Street | Bend | OR |
| Eugene | 111 Highway 99 North | Eugene | OR |
| Portland | 12005 N Burgard Road | Portland | OR |
| White City | 2625 Avenue G | White City | OR |
| Providence | 55 Fields Point Drive | Providence | RI |
| Chattanooga | 100 Workman Road | Chattanooga | TN |
| Pasco | 626 Grain Terminal Road | Burbank | WA |
| Tacoma | 1902 Marine View Drive | Tacoma | WA |
| Woodinville | 23711 63rd Ave. SE | Woodinville | WA |
| Bayamon | Road #2 KM 7.7, Corujo Industrial Park, Lot # 22, Hato Tejas Ward | Bayamon | PR |
| Caguas | Road #1 KM 30.0, Interior, Barrio Bairoa | Caguas | PR |
| Canovanas | Road #188, Lot 61A, Canóvanas Industrial Park, San Isidro Ward | Canovanas | PR |
| Ponce | Road PR-123 Final, Playa Ward | Ponce | PR |
| Salinas | Road #3 KM 156.4, Barrio Aguirre, P.O. Box 1153 | Salinas | PR |

*Consent Decree*
*United States v. Schnitzer Steel Industries, Inc.*